Dear Mr. Ponstein and Members:
This is in response to your Resolution No. 1909-11-01, requesting that this office resolve the problem associated with the ownership of Bayou Yscloskey.
We interpret this request as concerning ownership by the State, and navigability, public use and access to Bayou Yscloskey by the public at large.
Upon receiving your opinion request, we contacted the State Land Office, which has researched this matter on several occasions, and we were provided information, quadrangle maps, data and the original General Land Office ("GLO") Surveys of the United States showing Bayou Yscloskey as surveyed by the Federal Deputy Surveyor in 1845. We also learned that an individual is asserting private ownership claims to the bed and bottom of Bayou Yscloskey, and that charges are sometimes imposed on vessels navigating the area, causing confrontations to occur and requests being made to the St. Bernard Parish Government for resolution of the problem.
With the further assistance of the State Land Office, we have reviewed the official U.S. Government Township Plats, field notes, quadrangle maps of the U.S.G.S. (Yscloskey Quadrangle — various dates), satellite imagery which geo-references latitude and longitude, and shows the location of the government sections as originally surveyed, and facilitating measurement of the width of the subject water body on various dates.
A brief review of the materials referenced above will show that as "Bayou Ysclocsy" was depicted on the 1845 original survey (GLO), and showed it to be double-lined, meaning that it had sufficient width and depth to be considered navigable at that time. The Bayou shown on 1935 and later quadrangle maps is named "Bayou Yscloskey", and is in the same geographic vicinity as ABayou Ysclocsy as shown on the original GLO survey. This naturally occurring body of water was clearly traversed by the original surveyor, using specific courses and having specific bearings and distances. This naturally occurring body of water is not to be confused with ABayou Izclosksy , located approximately three hundred feet to the west and generally parallel to Bayou Yscloskey.
Bayou Izclosksy is not shown on the original government survey and appears to be a man-made canal leading to Fort Proctor, also known as Fort Beauregard, in honor of General P.G.T. Beauregard, who is said to have been responsible for its construction. Bayou Izclosksy is to the west of and roughly parallels Bayou Yscloskey, but is almost straight in its alignment, indicating that it is a man-made canal. Historical documents indicate it was constructed between 1830-1856, to protect against military incursions of the type which occurred when British forces landed in the area during the war of 1812.
Bayou Izclosksy is clearly depicted on the April, 1856 Plot of Fort Proctor surveyed for P.G.T. Beauregard, and on the 1920 GLO survey of Proctor's Landing, or Fort Beauregard Military Reservation, in T14S, R15E, St. Helena Meridian, Louisiana. The location of the west bank of Bayou Izcloskey is shown to be approximately five hundred sixty-one feet (561') from the center of Fort Proctor on the 1920 GLO survey. Other maps show Bayou Izcloskey in this location, with a railroad and Bayou Yscloskey to the east. Bayou Yscloskey is misnamed on recent quadrangle maps, as in the case of the 1994 quadrangle map, which appears to mistakenly show the name of Bayou Yscloskey in the following fashion: The much larger bayou which has historically been known as Bayou Yscloskey to the east simply has the word ABayou on its southerly segment, while the word AYscloskey is placed adjacent to Bayou Izcloskey to the west, which occurs only north of MRGO, leading to confusion between the two water bodies.
It should also be observed that the naturally occurring Bayou Yscloskey to the east is far larger in size than Bayou Izcloskey, being approximately 300 feet in width across a closing line at its juncture with Lake Borne, and having an average width of 200 — 250 feet along its course between Lake Borne and the Mississippi River Gulf Outlet (MRGO). Bayou Izclosky currently varies in width, is too narrow to be accurately measured from modern maps and does not cross MRGO to the south, ending in the marsh north of MRGO.
In its southerly segment south of MRGO, Bayou Yscloskey has a width of approximately 75 to 100 feet, varying along its course south to its juncture with Bayou LaLoutre at the town of Yscloskey. Thus, Bayou Yscloskey furnishes a continuous waterway from Lake Borne to the Town of Yscloskey.
It should also be noted that Bayou Yscloskey appears to have been pushed and shaped by construction of the Mexican Gulf Railroad which ran along its westerly bank towards Shell Beach during the 1800's. This railroad, later known around 1890 as the Shell Beach and Gulf Railroad, and being named the Louisiana Southern Railroad around 1901, followed the westerly bank of Bayou Yscloskey, and a "Y" shaped or triangular shaped spur was constructed in the area of the bayou which is now between Lake Borne and MRGO, forcing a meander loop in the Bayou to form to the east of its original location as surveyed in 1845. It further appears that construction along the banks and filling of the adjacent marsh lands has pushed and shaped Bayou Yscloskey in its southerly reach, although it still follows the general alignment of the original survey.
It is our conclusion from a review of the materials referenced above that Bayou Yscloskey is a naturally occurring navigable body of water which has become deeper and wider due to natural forces. The Corps of Engineers has found that Bayou Yscloskey, as well as other bayous in the vicinity, such as Bayou La Loutre, Bayou St. Malo and Bayou Dupree, have been used by recreational craft, commercial fisherman and trappers, as well as oil industry craft. The Corps of Engineers has also pursued dredging and channelization under the authority of the River and Harbors Act of 26th, August, 1937, in an effort to maintain a channel at the mouth of Bayou Yscloskey of 6 by 40 feet into Lake Borne. The Corps has calculated vessels and vessel draft for vessels using these bayous and has provided numerical counts for various years, varying in number from 679 to 1,205 for the years 1972 — 1973, by way of example. Thus, the waters of Bayou Yscloskey are openly navigable, susceptible of both recreational and commercial navigation, as well as heavy navigation from petroleum industry vessels.
The State therefore claims ownership of Bayou Yscloskey as a naturally occurring navigable waterway owned by the State by virtue of its inherent sovereignty and, additionally, under the authority of La.R.S. 9:1101, La.R.S. 41:1701, La.R.S. 56:3A, and the jurisprudence of this State, including State v. Jefferson Island Salt Mining Co., 183 La. 304,163 So. 145 (1935), cert. den. 297 U.S. 729, 56 S.Ct. 667, 80 L.Ed. 1011
(1936).
It is the long-settled rule of law in this State that "where the forces of nature — subsidence and erosion — have operated on the banks of a navigable body of water, regardless of whether it be a body of fresh water or the sea, or an arm of the sea, the submerged area becomes a portion of the bed and is insusceptible of private ownership. * * * It is the rule of property and of title in this State, and also a rule of public policy that the State, as a sovereignty, holds title to the beds of navigable bodies of water." Miami Corp. v. State, 186 La. 784, 173 So. 315
(1936), at 322, cert. den. 302 U.S. 700, 58 S.Ct. 19, 82 L.Ed. 541
(1937). Based upon the information we have reviewed, the beds and bottoms of the subject water bodies, as identified above, are owned by the State and the public has a legal right of access to navigate these waters for all purposes.
There is no authority for private interests to close, block, obstruct or limit access and use of these waterways, which actions would be contrary to the numerous cited provisions of Louisiana law. Additionally, the Louisiana Criminal Code specifically prohibits blockage of a highway of commerce under La.R.S. 14:96, the pertinent provisions of which read as follows:
 Aggravated obstruction of a highway of commerce is the intentional or criminally negligent placing of anything, or performance of any act, on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered.
The simple obstruction of a highway of commerce is also prohibited by La.R.S. 14:97, as follows:
 Simple obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, which will render movement thereon more difficult.
Further, even the obstruction of a public passage is prohibited by the La.R.S. 14:101, as follows:
 No person shall willfully obstruct the free, convenient and normal us of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor or passage of any public building, structure, water craft or ferry, by impeding, hindering, stifling, retarding or restraining traffic or passage thereon or therein.
Under the Louisiana Constitution of 1974, "a district attorney * * * shall have charge of every criminal prosecution by the State in his district * * *" and would be the appropriate authority to pursue such violations under Article V, Section 26, although the Attorney General could provide advise and assistance upon request under Article IV, Section 8.
We hope this opinion is of benefit to you and if we may be of further assistance, please advise us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________________ GARY L. KEYSER, CHIEF LANDS NATURAL RESOURCES SECTION
RPI/GLK/tp
Bcc: District Attorney John T. Rowley